793 F.2d 478
 45 Fair Empl.Prac.Cas. 923,
41 Empl. Prac. Dec. P 36,500, 33 Ed. Law Rep. 80
 Joe SHOCKLEY, Jr., Plaintiff-Appellant,
v.
VERMONT STATE COLLEGES, Janet Gorman Murphy, as President of
Lyndon State College, James, K. Graby, as Academic
Dean of Lyndon State College,
Defendants-Appellees.
 No. 1189, Docket 86-7098.
 United States Court of Appeals,
Second Circuit.
 Argued April 2, 1986.
Decided June 18, 1986.
 
 Douglas S. Moore, Norwich, Vt. (Brownell & Moeser, P.C., Norwich, Vt., of counsel), for plaintiff-appellant.
 Nicholas DiGiovanni, Jr., Boston, Mass., (Morgan, Brown & Joy, Boston, Mass., of counsel) for defendants-appellees.
 Before KEARSE, PRATT and ALTIMARI, Circuit Judges.
 ALTIMARI, Circuit Judge:
 
 
 1
 Appellant Joe Shockley, Jr. appeals from a judgment entered January 7, 1986 in the United States District Court for the District of Vermont, James S. Holden, Senior United States District Judge, granting summary judgment in favor of defendants in an action alleging violations of rights secured by the Fourteenth Amendment to the United States Constitution and by the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621 et seq., ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., ("Title VII"), 42 U.S.C. section 1983, and state contract law.
 
 
 2
 Appellant contends that the district court acted improperly by ignoring material facts in the record, by resolving fact questions, and by failing to view the record in a light most favorable to appellant. More particularly appellant argues that the district court erred in finding that he had failed to file his charges under the ADEA and Title VII with the EEOC within 300 days after receiving final notice of termination and in finding that the case does not present facts on which a jury could find that the limitations period was tolled or that the appellees were estopped from replying on the limitations bar.
 
 
 3
 For the reasons stated below, we affirm.
 
 FACTS
 
 4
 Appellant was appointed to a non-tenured faculty position at Lyndon State College ("Lyndon"), a part of the Vermont State College system, in 1978. Appellant received a letter of non-reappointment dated July 17, 1981 from the President of Lyndon, appellee Janet Gorman Murphy. The letter stated: "I regret to inform you that upon review of your personnel file I have decided not to reappoint you for the 1982-1983 academic year. Therefore, the 1981-1982 academic year will be your final year at Lyndon State College."
 
 
 5
 At the time of this decision, appellant was covered by a collective bargaining agreement in force between Vermont State Colleges and the VSC Faculty Federation, AFT, AFL-CIO. The collective bargaining agreement provided a one-year notice of nonrenewal to faculty members with two years of service and also provided:
 
 
 6
 Reappointment is presumed unless there is a written notification of non-reappointment no later than (a) March 1 of the first year of service, (b) December 15 of the second year of service, (c) September 1 of all succeeding years, or unless the appointment is terminal.... In all cases of non-reappointment written notice of reasons shall be given after the third full year of service.
 
 
 7
 By letters dated August 14 and 15, 1981, appellant advised appellee Murphy that (1) he was filing a grievance under the collective bargaining agreement; (2) he believed his termination was based on age, sex, and handicap discrimination; and (3) the July 17, 1981 termination letter was ineffective since it failed to provide reasons for the termination. By letter dated September 16, 1981, appellant was informed that his grievance was denied and that the reason for his termination was a lack of "substantially above average teaching effectiveness."
 
 
 8
 During November of 1981, appellant met with appellee Murphy and was told repeatedly by appellee that the non-reappointment decision would not be rescinded.
 
 
 9
 At a department meeting held on March 9, 1982, which appellant attended, a fellow faculty member reported that "Dean Dethy will not replace Joe Shockley's position. He feels that Dr. Shockley will return in the Fall. When asked what will happen if Dr. Shockley does not return, Dean Dethy replied that the Recreation Department would only be a four-position Department." See Minutes of the March 9, 1982 Recreation and Leisure Studies Department Meeting, App. at 35.
 
 
 10
 On May 27, 1982, the Vermont Labor Relations Board upheld Lyndon's decision to terminate appellant. Following a request for reconsideration, the Board reaffirmed its decision on July 15, 1982. Appellant taught at Lyndon through the academic year that ended in June, 1982.
 
 
 11
 Appellant filed a charge of sex, age, and handicap discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Civil Rights Division of the Vermont Attorney General's Office on September 29, 1982. The charge was received by the EEOC on October 1, 1982, but was not filed within the meaning of 29 U.S.C. section 626(d)(2) and 42 U.S.C. section 2000e-5(e) until November 29, 1982. See Mohasco Corp. v. Silver, 447 U.S. 807, 814 n. 16, 100 S.Ct. 2486, 2491 n. 16, 65 L.Ed.2d 532 (1980). Appellant received a right-to-sue letter dated May 11, 1983 from the EEOC, and filed his complaint with the district court on August 8, 1983.
 
 PROCEDURAL BACKGROUND
 
 12
 Appellees filed the first of two motions for summary judgment on November 2, 1983, asserting that (1) appellant's ADEA and Title VII claims were barred because not timely filed with the EEOC, see 29 U.S.C. Sec. 626(d); 42 U.S.C. Sec. 2000e-5(e); (2) appellant's ADEA claim was barred because not filed with the court within the two-year statute of limitations applicable in ADEA cases, see 29 U.S.C. Secs. 255, 626(e); (3) appellant's claims had been adjudicated before administrative agencies, and thus appellant was barred from relitigating those claims by the doctrines of res judicata and collateral estoppel; and (4) there remained no genuine issues of material fact. By Memorandum of Decision dated August 21, 1984, Judge Holden denied the motion for summary judgment finding that certain facts may have "clouded" the finality of the July 17, 1981 notice of non-reappointment, and ordered that discovery proceed so as to clarify "conflicting inferences" regarding equitable tolling or estoppel. Memorandum of Decision, 83-CV-289 at 9, 12 (August 21, 1984). Discovery was completed by April 30, 1985.
 
 
 13
 On May 21, 1985, appellees filed their second motion for summary judgment, renewing their earlier arguments and emphasizing that appellant's deposition testimony established that there was no basis for tolling the applicable statute of limitations. By Memorandum of Decision dated January 7, 1986, Judge Holden held that the July 17, 1981 letter was a final notice of termination and that "[t]he record, as now constituted, clearly demonstrates ... that [appellant] has not been obstructed in presenting his complaint by any misleading inducement or deceptive conduct on the part of the defendants." The judge concluded that "[i]n this context of undisputed facts, there is no basis for equitable tolling of the statute of limitations." Memorandum of Decision, 83-CV-289 at 7 (January 7, 1986). Accordingly, judgment was entered in favor of appellees as to appellant's claims under the ADEA and Title VII. Appellant's pendent state contract claims were dismissed without prejudice while appellant's cause of action under Section 1983 was dismissed for failure to state a claim. See Shaw v. Merritt-Chapman & Scott Corp., 554 F.2d 786, 789 (6th Cir.), cert. denied, 434 U.S. 852, 98 S.Ct. 167, 54 L.Ed.2d 122 (1977) (court may presume an adjudication on the merits where district court fails to specify otherwise).
 
 DISCUSSION
 
 14
 The only issue before this court is whether summary judgment was awarded properly in favor of appellees. The standard for reviewing a grant of summary judgment is the same as that applied by the district court when initially deciding the motion under Federal Rule of Civil Procedure 56(c). See Burtnieks v. City of New York, 716 F.2d 982, 985 (2d Cir.1983) (citing C. Wright, A. Miller & M. Kane, 10 Fed.Prac. & Proc. Sec. 2716 (2d ed. 1983)). When ruling on a motion for summary judgment, a court must "resolve all ambiguities and inferences ... in the light most favorable to the party opposing the motion," United States v. One Tintoretto Painting, 691 F.2d 603, 606 (2d Cir.1982) (citations omitted), and may grant the motion only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 15
 Under the ADEA and Title VII, a charge of discrimination must be filed with the EEOC before instituting an action in federal court. 29 U.S.C. Sec. 626(d); 42 U.S.C. Sec. 2000e-5(e); see United Air Lines Inc. v. Evans, 431 U.S. 553, 555 n. 4, 97 S.Ct. 1885, 1887 n. 4 (1977); O'Malley v. GTE Service Corp., 758 F.2d 818, 820 (2d Cir.1985). Specifically, the ADEA requires that in a "deferral state," such as Vermont, a charge must be filed "within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier." 29 U.S.C. Sec. 626(d)(2). Title VII prescribes similar time limits for filing with the EEOC, 42 U.S.C. Sec. 2000e-5(e).
 
 
 16
 Generally, the timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory act, not from the date the decision takes effect. See Chardon v. Fernandez, 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981); Delaware State College v. Ricks, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980); O'Malley v. GTE Service Corp., 758 F.2d 818, 820 (2d Cir.1985); Miller v. International Telephone & Telegraph Corp., 755 F.2d 20, 23 (2d Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985). Appellees are alleged to have unjustifiably terminated appellant under the guise of an annual performance review. Accordingly, this court must determine when appellant received final notice of termination, the allegedly discriminatory act.
 
 
 17
 Appellees contend that the alleged act of discrimination occurred on July 17, 1981, the date of the non-reappointment letter, thereby making the November 29, 1982 filing with the EEOC untimely. Conversely, appellant argues that the July 17, 1981 letter was invalid because it failed to conform to the collective bargaining agreement, and therefore that the act of discrimination did not occur until he was actually discharged in June, 1982. In the alternative, appellant contends that appellees' acts after sending the termination letter led him to believe that he had not been terminated, and that appellees therefore are estopped from relying on the limitations bar. More particularly, appellant asserts that the district court failed to address the following uncontested, material facts:
 
 
 18
 1. That appellees failed to provide reasons for the termination as required under the collective bargaining agreement;
 
 
 19
 2. That the Academic Dean indicated at the March 9, 1982 department meeting that appellant would be retained;
 
 
 20
 3. That faculty are assumed reappointed if not notified to the contrary; and4. That appellant believed that the July 17, 1981 letter was not a final notice of termination.
 
 
 21
 Like the district court in its Memorandum of Decision dated January 7, 1986, this court finds these assertions to be of no great import in view of the unequivocal statements made by appellant during his deposition. Appellant admitted at his deposition that (1) he failed to file his EEOC claim because he was ignorant of the law and because he chose to await the outcome of a formal arbitration hearing before the Vermont Labor Relations Board; (2) appellee Murphy was emphatic in denying appellant's requests for reconsideration of the nonrenewal decision; and (3) a fellow faculty member--not Dean Dethy--had made the statement at the March 9, 1982 department meeting that "[h]e feels that Dr. Shockley will return in the Fall."
 
 
 22
 This deposition testimony makes clear appellant's state of mind during the period at issue. The discovery ordered by the district court when denying appellee's initial motion for summary judgment served the purpose for which it was intended--it made certain whether or not appellant was aware of the finality of the July 17, 1981 letter of non-reappointment or acted in reliance on appellee's actions. Appellant revealed during his deposition that he was dilatory in filing not because of some act on the part of appellees, but because of his ignorance of the law and willingness to await the outcome of the grievance procedure. Based on these facts, this court must affirm the findings that the July 17th letter of non-reappointment was a "final" notice of termination within the meaning of Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), and that appellees did not act to mislead appellant. The district court's finding that there is no genuine issue as to any material fact is correct. The district court did not engage in the resolution of disputed factual questions, but instead relied on the "record, as now constituted" which contained a clear statement of appellant's thought processes--his deposition. The contradictions existing in appellant's statements do not constitute disputed factual questions; rather they represent vain attempts to divine questions of fact. There being none, no trial is warranted.
 
 ATTORNEY'S FEES
 
 23
 Appellees' request, pursuant to section 706 of Title VII, 42 U.S.C. Sec. 2000e-5, for attorney's fees both below and on appeal is denied since appellant's action was not "frivolous, unreasonable, or without foundation." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).
 
 
 24
 Accordingly, the district court's judgment is hereby affirmed.
 
 KEARSE, Circuit Judge, dissenting:
 
 25
 With due respect, I dissent from the decision to affirm the granting of summary judgment dismissing the complaint. My reading of the record persuades me that the district court resolved ambiguities and drew inferences in favor of the defendants, who were the moving parties, rather than in favor of plaintiff as nonmoving party as it was required to do in ruling on a motion for summary judgment. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).
 
 
 26
 Plaintiff Joe Shockley, Jr., brought this action under, inter alia, Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. (1982), and the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621 et seq. (1982), seeking redress for his allegedly discriminatory discharge from his faculty position by defendants (collectively the "College"). Defendants asserted a statute-of-limitations defense grounded on the proposition that plaintiff had been given notice of termination by letter from the College president in July 1981 ("July 1981 Letter"), stating that plaintiff would not be reappointed for the 1982-83 academic year; they contended that in order to pursue his present claims plaintiff was required to have filed a complaint with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the July 1981 Letter, i.e., in the spring of 1982. Since the EEOC complaint was not filed until September 1982, defendants contended that the claims were time-barred, and they twice moved for summary judgment on this ground.
 
 
 27
 From the outset, plaintiff took the position that his time to file his EEOC complaint should not be deemed to date from the July 1981 Letter because he had believed the letter was not a final notice of termination. He based this belief in part on the fact that other faculty members had received such letters and had been reappointed, and on the fact that the chairman of his department reported, in a department meeting on March 9, 1982 ("March 1982 meeting"), that the college dean had stated that he did not intend to fill plaintiff's position because he believed plaintiff would be returning in the fall of 1982. In support of his contention, plaintiff submitted the minutes of the March 1982 meeting, which reflected that the department chairman had made the statement described by plaintiff; an affidavit submitted by defendants supported the contention that other faculty members had received notices similar to that received by plaintiff and had been reappointed.
 
 
 28
 In a Memorandum of Decision dated August 21, 1984 ("1984 Decision"), the court denied defendant's first motion for summary judgment. The court correctly discussed the principles governing the granting of summary judgment motions, id. at 8-9, noted plaintiff's factual contentions and the documentary support for them, and concluded that summary judgment on the statute-of-limitations defense was inappropriate because there existed an issue of fact as to whether the College was equitably estopped from relying on the July 1981 Letter to start the running of the limitations period:
 
 
 29
 [T]he clarity of Dr. Shockley's termination notice date of July 17, 1981 was clouded by several events which could have led plaintiff to believe that he could be rehired....
 
 
 30
 ... [E]quitable grounds for tolling are present. That others in Dr. Shockley's position who received letters of non-reappointment were eventually reappointed and the Academic Dean's statement in Dr. Shockley's presence that he expected Dr. Shockley to return in the fall are sufficient grounds for tolling the running of the EEOC filing requirements until plaintiff's final day of actual employment.
 
 
 31
 Summary judgment is particularly inappropriate where, as here, conflicting inferences emerge from the facts. Robertson v. Seidman & Seidman, 609 F.2d 583, 591 (2d Cir.1979). Viewing the evidence in a light most favorable to the non-moving party, it is clear that summary judgment must be denied.
 
 
 32
 1984 Decision at 12-13 (footnote omitted).
 
 
 33
 Discovery ensued, including the taking of plaintiff's deposition, and in May 1985 defendants again moved for summary judgment on statute-of-limitations grounds. This time they argued that plaintiff's deposition answers showed that he had not delayed the filing of his EEOC complaint because he believed the July 1981 Letter was not a final notice of termination but instead had delayed filing because he wanted to await the outcome of a grievance proceeding he had instituted. Defendants sought to support this argument by noting that plaintiff had learned in the spring semester of 1982 of the right to file such a complaint, and by describing and quoting plaintiff's deposition testimony as follows:
 
 
 34
 Plaintiff was then asked why once he found out, by reading a book, that he could file charges, he waited until the fall of 1982.
 
 
 35
 "Q After you read in a book that you had a right to file charges, did you consider doing so at that time?
 
 
 36
 "A Yes.
 
 
 37
 "Q And is there some reason why you didn't do so in the spring of '82 as opposed to this fall of '82? Can you recall why you waited until late September to file those charges?
 
 
 38
 "A Yes.
 
 
 39
 "Q What was the reason?
 
 
 40
 "A I was waiting to hear the results of the labor board hearing."
 
 
 41
 (Defendants' Memorandum of Law in Support of Second Motion for Summary Judgment at 6; footnote omitted.)
 
 
 42
 In a Memorandum of Decision dated January 7, 1986 ("1986 Decision"), the district court granted defendants' renewed motion for summary judgment, accepting defendants' argument that this testimony showed, dispositively, that the College's conduct, including the department chairman's statement at the March 1982 meeting that the dean expected plaintiff to return in the fall of 1982, had not misled plaintiff into thinking that the July 1981 Letter was not a final notice of termination. The court stated that when "[a]sked why he did not file charges until the fall of 1982, the plaintiff explained the reason for the delay: 'I was waiting to hear the results of the labor board hearing.' " Id. at 5. The court concluded that
 
 
 43
 [i]n opposition to the defendants' motion, the plaintiff does not refute his deposition testimony. He does not claim he was misled by the defendants' behavior. He merely asserts the issue presents a question of fact.... The only reason that has been presented to the court for the plaintiff's failure to file his charge is his ignorance of the law and his intentional delay to await the outcome of his state grievance proceeding. This is not enough....
 
 
 44
 ....
 
 
 45
 The record, as now constituted, clearly demonstrates by the plaintiff's own testimony that he has not been obstructed in presenting his complaint by any misleading inducement or deceptive conduct on the part of the defendants.
 
 
 46
 1986 Decision at 6-7.
 
 
 47
 In my view, the court's decision to grant summary judgment on the basis of plaintiff's deposition testimony is flawed logically, doctrinally, and factually. First, the logical connection between the testimony as given and the inference that defendants and the court drew from it is lacking. The question was why plaintiff waited until fall to file his EEOC complaint rather than filing it in the spring. His answer was that he wanted to await the outcome of a labor board proceeding. This answer is in no way the equivalent of a concession that plaintiff was not misled by the College into believing there was no spring 1982 deadline; nor is there anything inconsistent between believing that there is no spring deadline (thus permitting one to wait until fall) and waiting until fall to gain new information. In order to treat plaintiff's deposition testimony as a concession, defendants and the court have in effect treated as equivalents questions or contentions that are entirely different. Thus they have either treated the question
 
 
 48
 (A) "Why did you wait until fall?" as if it had
 
 
 49
 been
 
 
 50
 (B) "Why did you not meet the spring deadline?";
 
 
 51
 or treated plaintiff's contention that he was
 
 
 52
 (A) "permitted to wait until fall" as being that he
 
 
 53
 was
 
 
 54
 (B) "required to wait until fall";
 
 
 55
 or read his contention that he was
 
 
 56
 (A) "not required to file in the spring" as being
 
 
 57
 that he was
 
 
 58
 (B) "required not to file in the spring."
 
 
 59
 In none of these pairs is (A) the equivalent of (B). In these pairings, (A) reflects the question asked and the plaintiff's contention. In granting summary judgment, however, the court read (A) as meaning only (B). Given the court's failure to distinguish (A) from (B), apparently the only way plaintiff could have avoided summary judgment here was to answer the question "Why did you wait until fall" with the nonresponsive answer, "I did not think I had a spring deadline because the College's actions had led me to believe the July 1981 Letter was not a final notice of termination." This answer would have been nonresponsive, of course, because the absence of a deadline is not a reason to wait; it is a condition that permits one to wait.
 
 
 60
 So far as the record before us discloses, plaintiff was not asked any question to which a responsive answer would have indicated that he was not led by the College to believe there was no spring 1982 deadline. Plaintiff was not asked whether he recognized a spring deadline; he was not asked on what he relied in assuming, if he did, that there was no spring deadline; he was not asked why, if he recognized a spring deadline, he did not meet that deadline in filing his EEOC complaint. He was asked only why he waited until fall. His answer that he waited because he wanted to learn the result of his labor board proceeding was directly responsive to this question, and to infer that this meant he thought there was a spring deadline is both contrary to summary judgment principles, which require that inferences be drawn in favor of the nonmoving party, and contrary to logic: The fact that plaintiff deliberately waited until fall--for whatever reason--is far more consonant with the inference that he thought he did not have a spring deadline.
 
 
 61
 Finally, in stating that plaintiff had not claimed he was misled by the College or otherwise sought to refute defendants' inference that the College's conduct played no role in his allowing the spring 1982 deadline to pass, the court ignored plaintiff's affidavit in opposition to defendants' second summary judgment motion. In that affidavit, dated June 12, 1985, plaintiff stated in part as follows:
 
 
 62
 2. I did not consider the July 17, 1981 letter from [the College] to me as an irrevocable notice of termination for several reasons, including the following:
 
 
 63
 ....
 
 
 64
 b. I knew of several other faculty members who had received similar letters and had been retained. This was common knowledge among the faculty before and after I received the July 17, 1981 letter.
 
 
 65
 c. When I was hired by [the College] I was told in writing by President Murphy that the department chairman would represent my interests with the administration. John DeLeo was department chair in March, 1982 when he advised the department, during a meeting held to discuss staffing decisions, than [sic ] Dean Ray Dethy had determined that I would be retained for the academic year 1982-83.
 
 
 66
 The events described in these statements had been substantiated by documentary evidence submitted in connection with defendants' first summary judgment motion. Thus, even assuming that the court were correct in its characterization of plaintiff's deposition testimony as eschewing any reliance on the conduct of the College as having induced his belief that there was no spring 1982 deadline, the court was plainly wrong in its assertion that plaintiff had come forth with nothing to refute such a characterization.
 
 
 67
 Because Shockley had alleged, and supported, facts sufficient to support a finding of equitable estoppel, the question of whether the College had misled him, causing him not to recognize a spring 1982 deadline for the filing of his EEOC complaint, and should therefore be equitably estopped from relying on the statute of limitations, was a question of fact to be decided by the factfinder at trial. See Dillman v. Combustion Engineering, Inc., 784 F.2d 57, 61 (2d Cir.1986); Cerbone v. International Ladies' Garment Workers' Union, 768 F.2d 45, 47 (2d Cir.1985); Aronsen v. Crown Zellerbach, 662 F.2d 584, 595 (9th Cir.1981), cert. denied, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983); Coke v. General Adjustment Bureau, 640 F.2d 584, 595 (5th Cir.1981). The district court's denial of summary judgment in its 1984 Decision was correct, and the development of the record to include plaintiff's innocuous response to the obliquely interpreted question of why he waited until the fall to file his claim did not resolve the factual issues and thus did not make summary judgment any more appropriate in 1986.
 
 
 68
 Accordingly, I would vacate the judgment of the district court and remand for trial of at least the issue of equitable estoppel.