**R. Penelope PHILLIPS, Plaintiff,**

v.

**GENERAL DYNAMICS CORPORATION, and General Dynamics/Electric Boat Division, Defendants.**

No. 91–CV–905.

United States District Court, N.D. New York.

Jan. 19, 1993.

Office of James W. Bendall, Schenectady, NY, for plaintiff; Kevin S. Mednick, of counsel.

General Dynamics Corp., Corp. Counsel, Groton, CT (Rodger W. Lehr, Jr., of counsel), and Bond, Schoeneck Law Firm, Albany, NY (Nicholas J. D'Ambrosio, of counsel), for defendants.

## MEMORANDUM—DECISION & ORDER

McAVOY, District Judge.

In this employment discrimination case Ms. R. Penelope Phillips (Plaintiff) brings five causes of action against her former employer, General Dynamics Corporation. She claims that she was discriminated against on the basis of her gender and age during her tenure with General Dynamics, and that this discrimination resulted in her constructive discharge.

The first cause of action alleges a violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* The second cause of action alleges a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Finally, the third cause of action alleges a violation of New York State Executive Law § 296.

In this motion Defendants seek an order granting them summary judgment on the entire complaint.

This motion came to be argued before the court on January 11, 1993. Plaintiff has dropped her fourth and fifth causes of action, and in a decision rendered from the bench the court dismissed the third cause of action. Having considered the submissions of the parties and the arguments advanced by counsel on January 11, this constitutes the court's decision on the remainder of Defendants' motion.

Facts:

Plaintiff began working for General Dynamics Electric Boat Division on June 8, 1987. Previously, she had been working as a senior contract administrator for Virginia Power at a salary of $45,500.00 per anum. When she joined Defendant her salary was $41,000.00 per anum. She was hired by James Barney, as a purchasing agent to run the Off–Hull Section of the Purchasing Department. Barney was her supervisor. She had considerably more experience than her counterpart in the On–Hull Section of the Purchasing Department, Ted Hurlock; and Mr. Hurlock was younger than Plaintiff. According to Plaintiff, the work was to be divided equally between the On–Hull and Off–Hull groups.

Plaintiff claims in her affidavit that Hurlock was assigned a staff with more experience than the staff assigned to her control. In addition, Plaintiff avers that the work was not distributed equally. Instead, she claims that she received a much larger percentage of the work than did Mr. Hurlock. In support of this claim, Plaintiff has supplied the court with evidence of the work load disparity. Moreover, Plaintiff maintains that in Barney's absence Hurlock was given defacto responsibility for the assignment of duties, while Plaintiff was only rarely given this responsibility. Overall, Plaintiff argues that the overwhelming majority of work was given to her and her staff, and that the dearth of responsibility was given to Hurlock.

Plaintiff explains that security clearance had to be obtained from both the Electric

Boat Division and the United States Government before she could attend certain management/supervisor meetings. As further evidence of the alleged discrimination, Plaintiff argues that she was not granted this security clearance until May of 1988. Consequently, she was unable to attend these management meetings before that time. She claims that after attending four such meetings, the meetings were discontinued because the material had been covered at earlier meetings. Therefore, she was effectively precluded from participating in the meetings. However, even after this point in time Plaintiff was denied access to weekly staff meetings which Mr. Hurlock and a male member of his staff regularly attended. Later, when Plaintiff was in the Refueling Department she was allowed to attend such weekly staff meetings, however her only function was to take minutes for her new supervisor.

During her first year with Defendant, Plaintiff maintains that she received nothing but praise from her supervisor. However, when the employees were ranked, Mr. Hurlock was ranked number one and Plaintiff was ranked number two. Although raises were not given to anyone in the department, Barney was given $3,500.00 to distribute as awards to the employees under his supervision. Hurlock received $2,500.00, Plaintiff only received $1,000.00, and Arthur Foo, a buyer in Mr. Hurlock's department received $2,000.00. Plaintiff complained to her supervisor who, according to Plaintiff, indicated for the first time that he was disappointed in her performance. She alleges that he stated "maybe I made a mistake. Do you want me to take the raise back? If you don't like it, you can quit."

After this incident, Plaintiff began to search for work elsewhere. On November 29, 1988 Plaintiff tendered her resignation to Barney, effective January 3, 1989. However, after tendering her resignation Plaintiff had a conversation with Fred Miller, the Site Manager for the Electric Boat Division. He told her that he did not want to lose a good employee and that he wanted her to stay. Furthermore, he told her that he would look into the problem, and try to find her a position elsewhere. On her last day, January 3, 1989 Plaintiff was notified by Lloyd Higgins in the Refueling Department that there was a position for her in that area.

Plaintiff maintains that she was told by Van Athanas, the Human Resources Director that there would be no immediate increase in pay, but that she would be eligible for a raise in July of that year. Because of the fact that she had tendered her resignation, Plaintiff was listed as terminated and she did not receive her first paycheck. For reasons which are unclear, Mr. Athanas delayed signing Plaintiff's authorization until March 3, 1989. Plaintiff argues that this delay is further evidence of discrimination. The authorization was then sent to Groton, Connecticut for review by Robert Nardone, Manager of Salary and Administration. Nardone was not officially notified of the transfer until March 26, 1989. This is significant, because as a result of this delay Plaintiff was not eligible for a July raise or a lump sum award. Consequently, with the exception of the lump sum award of $1,000.00, Plaintiff had completed two years without a single raise.

According to Plaintiff's affidavit, while she was in the Refueling Department Kathy Caval, a subordinate employee, informed her that Plaintiff's position would require exposure to radioactive shipments. Plaintiff claims that she was told that while she would only receive a one day training class, other members of the department would receive a week long intensive course on dealing with the radioactive material. Plaintiff believed that this position was dangerous, and resigned effective August 11, 1989. There is no question that Ms. Caval was not a management level employee.

Plaintiff filed a complaint with the New York State Human Rights Division. This complaint did not mention the radioactivity conversations as a basis for her allegations of discrimination. However, this issue was fairly presented to the Human Rights Division in papers subsequently filed prior to the determination. As of the date of oral

argument, the complaint before the Human Rights Division was still pending.

## DISCUSSION

■ The motion before the court is one for summary judgment. Rule 56(c) provides that summary judgment should be granted when the papers before the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The substantive law will determine which facts are *material*, and an issue is *genuine* if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The motion should be granted so long as the papers before the court demonstrate that the standard is satisfied. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where, as here, the nonmovant bears the ultimate burden of proof at trial, she may defeat the motion by producing sufficient specific facts to establish the existence of a genuine issue of material fact. *See Montana v. First Federal Savings and Loan of Rochester*, 869 F.2d 100, 103 (2d Cir.1989); *see also Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990).

Constructive Discharge:

Defendant's first argument is that the constructive discharge claim is barred as a matter of law because it is beyond the scope of the complaint filed with the State Division of Human Rights. However, as already indicated, Plaintiff presented subsequent materials to the Human Rights Division. Indeed, one of the documents is labelled an amendment to the complaint. Certainly, the constructive discharge claim could be reasonably expected to grow out of the filing. *Miller v. International Telephone and Telegraph Corporation*, 755 F.2d 20, 23–24 (2d Cir.1985). Therefore, Defendant's first argument fails.

The next point raised by Defendant in its motion is that no reasonable juror could find that the alleged radiation expo-sure/lack of training conversation took place. However, this point lacks merit because whether the conversation took place is undeniably a question of fact which cannot be resolved on a motion such as this. However, Defendant maintains that even if the conversation did take place, since Caval is not a management level employee her actions cannot bind the corporation. This argument is really subsumed in the next argument—that is, that the legal standard for a constructive discharge claim cannot be met.

■ The Second Circuit has clearly stated the substantive standard for a constructive discharge claim such as this. A constructive discharge occurs when the "employer deliberately makes an employee's working conditions so intolerable that the employee is forced into voluntary resignation." *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir.1983). In order for a plaintiff to prevail, "[t]he trier of fact must be convinced that the working conditions would have been so difficult or unpleasant that a *reasonable* person in the employee's shoes would have been compelled to resign." *Id.* quoting, *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir.1977).

■ This standard contains two separate elements: first, that the employer acted deliberately; and second, that the conditions were such that a *reasonable* person in the plaintiff's shoes would have been compelled to resign. "Deliberateness exists only if the actions complained of were intended by the employer as an effort to force the employee to quit." *Lombardo v. Oppenheimer*, 701 F.Supp. 29, 30 (D.Conn. 1987), quoting, *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986). The second element is an objective determination based upon the conditions deliberately created by the employer. Success does not depend upon the plaintiff's subjective beliefs.

First, Defendant focuses entirely on the alleged radiation exposure/lack of training conversation. While this may be a part of Plaintiff's constructive discharge claim, the

focus should be on the allegedly discriminatory working conditions as a whole. Nevertheless, Defendant's argument that Caval was not a management level employee is significant here. Although she argues that she was nonetheless led to believe that she would be exposed to radioactive materials, and that she was not properly trained for that work, Plaintiff does not argue that Caval was in a management level position.

■ In order for this alleged conversation to be relevant to her constructive discharge claim, it must demonstrate "deliberate" conduct on the part of Plaintiff's employer. Plaintiff cannot credibly argue that a statement by a subordinate employee such as Caval can be considered deliberate conduct by her employer. Moreover, as Defendant points out, Plaintiff never raised this issue with her supervisor in the Refueling Department. Therefore, because the alleged conversation cannot be considered deliberate conduct by the employer, it has no relevance to the constructive discharge claim.

■ However, this does not mean that the lack of training itself and/or the exposure to radiation would not be significant. Certainly, if plaintiff was placed in a work environment which was hazardous to her health because of a lack of proper training, a constructive discharge claim would lie. In *Meyer v. Brown & Root Construction Co.*, 661 F.2d 369 (5th Cir.1981), the plaintiff was a pregnant woman who was involuntarily transferred to heavy manual labor which posed substantial risks to her health. There, the court held that such action was sufficient to constitute constructive discharge.

However, Defendant presents the affidavit of Plaintiff's immediate supervisor, Joseph DelRe. The DelRe affidavit indicates that in July, 1989 Plaintiff was assigned to work as an escort in the Refueling Division.[1] The affidavit makes clear that as an escort Plaintiff was not exposed to any radiation, and that she received the one day training session given to escorts in the Refueling Division. Plaintiff has presented no proof that she was exposed to any radiation; nor does she present any evidence that she received less training than other escorts in the Refueling Division. As will be discussed below, these are certainly material issues, and Plaintiff has not demonstrated that there exists a genuine issue as to these facts.

■ The next question is whether the remainder of the "working conditions" alleged by Plaintiff are sufficient to constitute a constructive discharge claim. Based upon a review of the Second Circuit's treatment of these cases, summary judgment should be granted on the constructive discharge claim.

In *Martin v. Citibank, N.A.*, 762 F.2d 212 (2d Cir.1985), a case which the Court of Appeals would later describe as making the law of constructive discharge in the Second Circuit even more unfavorable to plaintiffs, *see Greenberg v. Hilton International Co.*, 870 F.2d 926, 936 (2d Cir.1989), the Second Circuit affirmed the district court's decision to grant a defendant's motion for a directed verdict. In *Martin* a former bank employee claimed constructive discharge. Her testimony, which was accepted as true, was that: her supervisor had loudly mentioned her having been polygraphed concerning cash disappearances; complaints relative to her attitude with co-workers were unfounded; her supervisor had given her the wrong combination to the night deposit box and that someone using his card had interfered with her deposits; and that she had been required to perform additional duties while serving customers. *Martin*, 762 F.2d at 221. The Court of Appeals held that the district court correctly concluded that "these incidents do not legally suffice to sustain an inference that a reasonable person would have been "compelled" to resign." *Id.*

Besides the alleged lack of training and exposure to radiation, the conduct alleged by Plaintiff in the instant case has to do

---

1. As an escort, Plaintiff was required to accompany vendors visiting the facility who did not have the necessary security clearance.

with receiving lower pay, additional work assignments, and disparate treatment concerning responsibilities. While this conduct may constitute discrimination in the work place, the cases cited by the court in *Martin* demonstrate that this type of conduct is insufficient to constitute a constructive discharge claim. Lower pay resulting from gender discrimination is not sufficient. *Bourque v. Powell Electrical Mfg. Co.*, 617 F.2d 61 (5th Cir.1980). Likewise, unfavorable job assignments and a discriminatory failure to promote are insufficient. *Muller v. United States Steel Corp.*, 509 F.2d 923 (10th Cir.), *cert. denied*, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975). Resolving all questions of fact in favor of the plaintiff, the court finds that the conditions created by Plaintiff's employer were not "so difficult or unpleasant that a reasonable person in [Plaintiff's] shoes would have felt *compelled* to resign." *Pena*, 702 F.2d at 325. Therefore, the claim for constructive discharge is dismissed. All that remains for consideration is the claim for discrimination in the work place.

Statute of Limitations:

Defendant argues that Plaintiff's claims under Title VII and the ADEA for discrimination in the work place are time barred. The first issue raised by Defendant is the timing of Plaintiff's complaint with the New York State Division of Human Rights and the Equal Employment Opportunity Commission.

■ Under both Title VII and the ADEA, as a prerequisite to filing a civil action the plaintiff must first file a charge with the Equal Employment Opportunity Commission (EEOC). 42 U.S.C. § 2000e–5(e); 29 U.S.C. § 626(d). This charge must be filed within a certain time period or a future civil claim will be barred. Under Title VII, if the plaintiff first files a charge with the state agency responsible for handling such claims, the charge must be filed with the EEOC within 300 days of the allegedly unlawful practice, or within 60 days after receipt by the plaintiff of notice of termination of the state proceedings, whichever is earlier. 42 U.S.C. § 2000e–5(e). Similarly, under the ADEA the

charge must be filed within 300 days, or within 30 days after the plaintiff receives notice of termination of the state proceedings. 29 U.S.C. § 626(d); *Shockley v. Vermont State Colleges*, 793 F.2d 478, 481 (2d Cir.1986).

■ Plaintiff argues that she has 90 days from receipt of her right-to-sue letter to file her lawsuit, 42 U.S.C. § 2000e–5(f); and that she received this letter on August 5, 1991—5 days before filing this action. It is true that an action not filed within 90 days of the plaintiff's receipt of a right to sue letter is untimely. Having met this requirement, Plaintiff's complaint is not untimely under 42 U.S.C. § 2000e–5(f). However, this does not change the requirement that the filing of the charge with the EEOC must itself be timely. The 90 day clock began to run when Plaintiff received the right-to-sue letter. The 300 day clock is wholly separate, and it begins to run on the date of the last unlawful act. These are two separate requirements under Title VII.

■ In order to enable states to combat discrimination, and to avoid unnecessary federal intervention in this effort, Title VII provides that no charge may be filed with the EEOC until 60 days have elapsed from the filing with the state agency, or termination of the state proceedings whichever is earlier. 42 U.S.C. § 2000e–5(c); *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 110–111, 108 S.Ct. 1666, 1669, 100 L.Ed.2d 96 (1988). Consequently, while claimants must file with the EEOC within a certain period of time, they are constrained by the provisions of the statute as to when the charge may be filed. In order to ensure that the charge is filed with the EEOC within the 300 day period, the claimant must therefore file it with the state agency within 240 days of the allegedly unlawful practice.

■ If the defendant is engaged in a continuous practice of discrimination, acts in furtherance of that practice are not viewed in isolation. *See Association Against Discrimination v. City of Bridgeport*, 647 F.2d 256, 274 (2d Cir.1981) and cases cited. Therefore, if the charge is

filed with the EEOC within 300 days of the last unlawful act by the defendant, the plaintiff may recover for earlier acts of discrimination which were part of the continuous practice. *Id.* This time period is measured from the date which the plaintiff receives notice of the allegedly discriminatory act. *Shockley, supra.*

■ Plaintiff filed her charge with the New York State Division of Human Rights on January 23, 1990. This charge was simultaneously filed with the EEOC. However, according to the holding in *Love v. Pullman Co.*, 404 U.S. 522, 526, 92 S.Ct. 616, 618, 30 L.Ed.2d 679 (1972), the charge filed with the EEOC is considered to be held in "suspended animation". Thus, the filing with the EEOC is effective at the termination of the state proceedings or 60 days after the filing of the state charge, whichever is earlier. *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). The proceedings before the State Division of Human Rights have not yet terminated. Therefore, the filing with the EEOC was effective on March 23, 1990. The critical question therefore is when did the last act take place.

■ Defendant argues that the last allegedly unlawful act occurred on April 19, 1989 when Plaintiff received her Logistics Specialist Payroll Authorization which informed her that she was not eligible for a merit increase in July of that year. Plaintiff argues that there was a continuing violation, and that the last discriminatory act was the failure to train her properly. However, as indicated above, the court finds that the failure to train/exposure to radiation allegation in the complaint is unsupported in the record, and that the undisputed proof is that she was not exposed to radiation.

At oral argument, the court asked Plaintiff's counsel what Plaintiff claimed was the last discriminatory act immediately preceding the alleged exposure to radiation. Plaintiff's counsel argued that it was the failure to give Plaintiff a merit increase in June, 1989. However, the uncontroverted proof clearly shows that Plaintiff was aware of the fact that she would not be eligible for the July merit increase on April 19, 1989. Therefore, Defendant is correct in asserting that the last act occurred on April 19, 1989.

With April 19, 1989 as the date of the last allegedly unlawful act, under Title VII Plaintiff's charge with the EEOC needed to be filed on or before February 13, 1990. The effective date of the filing was March 23, 1990, therefore her Title VII claims are time barred.

■ . Defendant argues that Plaintiff's ADEA claim is also barred by the statute of limitations contained in the Act. Absent evidence of a willful violation of the ADEA, the applicable statute of limitations is two years. 29 U.S.C. § 255(a). However, assuming that Plaintiff can prove a willful violation of the ADEA, her claim under the ADEA is also governed by a three year statute of limitations. *Russo v. Trifari*, 837 F.2d 40 (2d Cir.1988). The complaint was filed in this action on August 9, 1991 and it does not contain any allegations of a willful violation of the Act.

In opposition to Defendant's motion, Plaintiff asks that she be allowed to amend her complaint to allege a willful violation. The parties have completed discovery, and Plaintiff has presented no indication that any proof was adduced during discovery which would support such an allegation. Consequently, Plaintiff's request for leave to amend her complaint at this late stage is denied. The ADEA cause of action is therefore untimely and must be dismissed.

CONCLUSION

Plaintiff's claim for constructive discharge must be dismissed because she has failed to present sufficient proof to demonstrate the existence of a genuine issue of material fact. For the reasons expressed above, the first cause of action and the second cause of action are dismissed as untimely. Plaintiff has withdrawn the fourth and fifth causes of action; and in a decision rendered from the bench the court dismissed the third cause of action. The

Clerk is directed to enter judgment in favor of Defendants dismissing the complaint.

IT IS SO ORDERED.