Lisa C. TERNULLO, Plaintiff,

v.

Janet RENO, Attorney General,
U.S. Department of Justice,
Defendant.

No. 1:97–CV–1706.

United States District Court,
N.D. New York.

June 13, 1998.

Lisa C. Ternullo, Albany, NY, pro se.

David O. Buchholz, United States Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM, DECISION & ORDER

McAVOY, Chief Judge.

This employment discrimination action arose out of plaintiff Lisa Ternullo's employment with defendant United States Department of Justice ("DOJ"). Plaintiff alleges that while she was employed as a Conciliation Specialist in the Community

Relations Service ("CRS") of DOJ, her supervisor engaged in a pattern of discriminatory treatment of her on the basis of plaintiff's race and sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a. Plaintiff further alleges that after complaining about the treatment to CRS management, CRS officials engaged in unlawful retaliation through continued harassment, including threatening remarks and increasingly aggressive reprisals. Finally, plaintiff alleges that CRS officials maintained a hostile work environment so intolerable that she was forced to resign from her position with DOJ. Defendant now moves for summary judgment dismissing the Complaint.

## I. BACKGROUND

### A. Facts:

Plaintiff, a white female, was employed as a Conciliation Specialist for the CRS' Region II Office in New York City from January 1985 to October 1989. Her duties included conciliating disputes based upon race, color, or national origin, and required a high level of responsibility. She performed these duties under the general supervision of Regional Director Tommie Jones, a black female. When hired, plaintiff was one of five Conciliation Specialists in the New York office, two of whom were African–American males, one of whom was a Hispanic male, and one of whom was a white male.

Plaintiff alleges that from the time she began to serve in the New York office, Jones engaged in a pattern of intolerable discriminatory treatment that was different from the treatment of the male conciliators. She alleges that Jones required her to tell her when she went to the bathroom and sabotaged her work. In response to the treatment, plaintiff filed various grievances and complaints.

Plaintiff further contends that instead of helping her, the officials with whom she filed the complaints engaged in increasingly aggressive reprisals towards her. She claims the National Directors ("ND") (there were four during the relevant time period) endorsed Jones' actions and engaged in their own actions against plaintiff. Without specifying which ND took which action, plaintiff generally alleges that the NDs: 1) failed to end the harassment; 2) obstructed plaintiff's access to the appropriate officials to seek relief from the harassment; 3) used derogatory female stereotypes in reference to her; and 4) refused to implement an agency directive to evaluate the plaintiff for promotion. Plaintiff specifically alleges that ND Grace Flores Hughes: 1) told plaintiff that she resented plaintiff's filing an Equal Employment Opportunity ("EEO") complaint and demanded an apology; 2) falsified complaint processing dates; 3) reprimanded plaintiff in processing her complaint; 4) reprimanded plaintiff as "insubordinate;" 5) gave plaintiff a negative performance evaluation; and 6) prohibited plaintiff from interacting with community groups critical to the performance of plaintiff's work. Pl. Compl. ¶ 8.

In March of 1989, all the conciliation specialists in the Region II Office signed a memorandum requesting that Jones meet with them to discuss concerns about Jones' dysfunctional relationship with employees. The ND in charge at the time conducted an investigation and removed Jones from her position as Regional Director effective August 13, 1989. Plaintiff alleges that despite Jones' removal, her working conditions did not improve. She asserts that ND Hughes continued to refuse to acknowledge the discriminatory work conditions under which plaintiff suffered, was openly hostile towards her, refused to rescind reprimands the plaintiff received when filing complaints, and gave plaintiff a negative performance evaluation after Jones' departure. Additionally, plaintiff alleges that newly appointed Acting Regional Director Patricia Glenn told plaintiff that she knew of her EEO complaint and warned her to cooperate.

Finally, plaintiff alleges that on August 1, 1989, prior to the removal of Jones, she informed Senior Conciliator Victor Risso, who was in charge of the region while Jones was on sick leave, of her intentions to resign. At that time, plaintiff submitted a leave request to use up her remaining accrued leave,

processed cases to closure, and continued preparations to leave. Defendant denies that plaintiff notified CRS of her intention to leave until October 3 when plaintiff filed a written resignation. Plaintiff completed her work with CRS on October 21, 1989, citing discrimination and intolerable working conditions.

### B. Procedural History:

Plaintiff filed an initial complaint with the Equal Employment Opportunity Commission ("EEOC") on January 24, 1989, more than eight months prior to her resignation. The complaint alleged race and sex discrimination regarding the denial of a promotion and the harassment by Jones. The EEOC investigated the complaint and, upon request, referred the matter to an administrative law judge ("ALJ") for a hearing. In December 1993, the parties notified the ALJ that a settlement might be reached if the ALJ ruled on DOJ's motion for a recommended decision, without a hearing, on two issues: 1) whether plaintiff timely alleged a claim of constructive discharge, and 2) assuming timely filing, whether the constructive discharge claim must fail as a matter of law. On July 24, 1994, the ALJ issued a recommended decision stating that although the constructive discharge claim was timely alleged, plaintiff failed to establish a prima facie case of constructive discharge.

On April 11, 1995, the parties entered into a settlement agreement with respect to all claims except that of constructive discharge. On June 13, 1995, the DOJ Complaint Adjudication Office adopted the ALJ's recommended decision and the plaintiff appealed. On October 16, 1997, after review of the entire record, the EEOC issued a decision upholding the ALJ's findings and specifically rejecting plaintiff's contentions that she decided to resign during Jones' tenure and not on October 3, 1989 when she gave written notice of her resignation. On October 16, 1997, the EEOC issued plaintiff a right to sue letter.

On November 20, 1997, plaintiff commenced this lawsuit. The Complaint asserts four causes of action: 1) discrimination on the basis of race; 2) discrimination on the basis of sex; 3) unlawful retaliation; and 4) constructive discharge, all in violation of Title VII. Defendant appeared by answer filed March 2, 1998.

On March 2, 1998, defendant filed the present motion for summary judgment dismissing the Complaint, arguing that plaintiff, as a matter of law, cannot state a claim for constructive discharge because defendant did not deliberately make plaintiff's working conditions so intolerable that a reasonable person in plaintiff's position would have felt compelled to resign.

## II. DISCUSSION

### 1. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate only when "there is no genuine issue as to any material fact and .... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the moving party has established that no genuine question of material fact exists, the burden shifts to the non-movant to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-movant cannot rest upon "mere allegations or denials" asserted in her pleadings. *Id.; see Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994) (failure to support contentions with competent evidence cannot create issues of fact capable of defeating valid motion for summary judgment). Rather, the opposing party must present "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Absent such a showing, summary judgment will be granted.

"[C]onclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.'" *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 (2d Cir.1990) (*quoting Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)), *cert. de-*

*nied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991). Moreover, "[t]he non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material fact, or defeat the motion through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990).

Of course, it is well-established that in deciding a motion for summary judgment, the court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Cruden v. Bank of New York,* 957 F.2d 961, 975 (2d Cir.1992); *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989). Further, it is equally well-settled that "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

With this standard in mind, the Court turns to the issue of constructive discharge.

## 2. Constructive Discharge

Plaintiff alleges that defendant maintained a discriminatory work environment so hostile and coercive that she found the working conditions intolerable and was forced to resign from her position. (Pl.Compl.¶ 9). Defendant argues that to the extent plaintiff asserts a claim for constructive discharge, that claim should be dismissed.

To establish a prima facie case of intentional race or sex discrimination plaintiff must generally establish four elements. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (establishing four elements of prima facie disparate treatment model for Title VII intentional discrimination). First, plaintiff must establish that she is a member of a protected class. Second, she must show that she is qualified to hold the position. Third, plaintiff must show that she was discharged. Lastly, plaintiff here must show that the discharge occurred in circumstances that give rise to an inference of discrimination on the basis of plaintiff's membership in the protected class. *Chertkova v. Connecticut General Life Ins. Co.,* 92 F.3d 81, 91 (2d Cir.1996); *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994); *Woroski v. Nashua Corp.,* 31 F.3d 105, 108 (2d Cir. 1994); *Stetson v. NYNEX Service Co.,* 995 F.2d 355, 359 (2d Cir.1993). Defendant has moved for summary judgment on the basis that plaintiff can not establish the element of discharge, and is therefore unable to establish a prima facie case as a matter of law.

Given that plaintiff resigned from her position, she must rely on a theory of constructive discharge. *Chertkova,* 92 F.3d at 87; *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1188 (2d Cir.1987); *Pena v. Brattleboro Retreat,* 702 F.2d 322, 325 (2d Cir.1983). If plaintiff can make out a claim for constructive discharge, she will legally be deemed to have been discharged for purposes of making out a prima facie case. *Patterson v. Portch,* 853 F.2d 1399, 1406 (7th Cir.1988) (*citing Parrett v. City of Connersville,* 737 F.2d 690, 694 (7th Cir.1984)).

The Second Circuit has stated the substantive standard for a constructive discharge claim. A constructive discharge occurs when the " 'employer deliberately makes an employee's working conditions so intolerable that the employee is forced into voluntary resignation.' " *Pena,* 702 F.2d at 325 (*quoting Young v. Southwestern Savings & Loan Ass'n,* 509 F.2d 140, 144 (5th Cir.1975)). In order for a plaintiff to prevail, " '[t]he trier of fact must be convinced that the working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have been compelled to resign.' " *Id.* (*quoting Alicea Rosado v. Garcia Santiago,* 562 F.2d 114, 119 (1st Cir. 1977)).

This standard contains two separate elements: first, that the employer acted deliberately, and second, that the conditions were such that a reasonable employee in the plaintiff's shoes would have been compelled to resign. *See Levendos v. Stern Entertainment, Inc.,* 909 F.2d 747, 753 (3d Cir.1990) (invoking "reasonable employee" as the correct objective standard). As to the first element, the meaning of "deliberateness" is subject to some debate within the Second Circuit

and among the federal circuits. Some courts, including this one, have held that " '[d]eliberateness exists only if the actions complained of were intended by the employer as an effort to force the employee to quit.' " *Lombardo v. Oppenheimer,* 701 F.Supp. 29, 30 (D.Conn.1987) (*quoting Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir. 1985), *cert. denied,* 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986)); *see Phillips v. General Dynamics, Corp.,* 811 F.Supp. 788, 792 (N.D.N.Y.1993) (McAvoy, C.J.) (*citing Lombardo,* 701 F.Supp. at 30). On the other hand, at least one court in this circuit has held that the plaintiff does not have to show that the employer harbored specific intent to bring about resignation. *See Grant v. Morgan Guar. Trust Co.,* 638 F.Supp. 1528 at n. 15 (S.D.N.Y.1986) (*citing Pena,* 702 F.2d at 325; *Martin v. Citibank,* 762 F.2d 212, 221 (2d Cir.1985)); *compare Irving v. Dubuque Packing Co.,* 689 F.2d 170 (10th Cir.1982) (requiring specific intent element in constructive discharge); *with Pittman v. Hattiesburg Mun. Separate Sch. Dist.,* 644 F.2d 1071, 1077 (5th Cir.1981) ("The employee .... does not have to prove it was the employer's purpose to force the employee to resign."). We need not resolve this conflict here for this motion can be decided on the second element. Whether a reasonable employee in the plaintiff's shoes would have felt compelled to resign is an objective determination based upon the conditions deliberately created by the employer. "Success does not depend upon the plaintiff's subjective beliefs." *Phillips,* 811 F.Supp. at 792. Plaintiff's claim does not meet this standard.

Before returning to the facts alleged in this case, it is important to first understand what types of employer behaviors will support a finding that a reasonable employee in similar circumstances would feel compelled to resign. In *Martin v. Citibank,* the Second Circuit provided guidance as to what types of employer conduct "do not legally suffice to sustain an inference that a reasonable person would have been compelled to resign." *Martin,* 762 F.2d at 221 (internal quotations omitted). In *Martin,* a bank employee alleged that: 1) her supervisor loudly mentioned her having been polygraphed concerning cash discrepancies; 2) informal complaints about

her attitude were unfounded; 3) her supervisor gave her the wrong combination to the night deposit box and that someone using his card interfered with her deposits; and 4) she was given additional duties to perform. *Id.* at 221. The court concluded that this type of conduct, while perhaps discriminatory, was sufficiently similar to conduct alleged in other cases that courts found insufficient to sustain a constructive discharge claim. *Id.* (*citing Bourque v. Powell Elec. Mfg. Co.,* 617 F.2d 61, 65 (lower pay resulting from sex discrimination not sufficient); *Muller v. United States Steel Corp.,* 509 F.2d 923, 929 (10th Cir.1975) (unfavorable job assignments and discriminatory failure to promote insufficient), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975)); *see Kader v. Paper Software, Inc.,* 111 F.3d 337, 339–40 (2d Cir. 1997) (humiliation and stress suffered because employer was having affair with employee's wife insufficient); *Spence v. Maryland Casualty Co.,* 995 F.2d 1147, 1156 (2d Cir.1993) (allegations that employer intentionally criticized employee's job performance and made conditional threats of termination if performance did not improve not sufficient); *Stetson,* 995 F.2d at 360–61 (2d Cir.1993) (participating in early retirement option because plaintiff was dissatisfied with his assignments, criticisms of his work, and compensation did not support claim of constructive discharge); *Phillips,* 811 F.Supp. at 793 (receiving lower pay than male counterparts, additional work assignments, and disparate treatment concerning job responsibilities not sufficient for constructive discharge).

██ On the other hand, where an employee is subjected to a unreasonable risk of physical harm, to significant verbal abuse, or is forced to accept significantly lower pay or inferior working conditions, such evidence will be deemed sufficient to support a constructive discharge claim. *See e.g., Goss v. Exxon Office Systems Co.,* 747 F.2d 885, 888–89 (3d Cir.1984) (plaintiff was verbally abused, threatened and forcibly transferred to position with substantially lower salary and inferior working conditions); *Meyer v. Brown & Root Constr. Co.,* 661 F.2d 369, 371–72 (5th Cir.1981) (involuntary transfer of pregnant employee to heavy manual labor

that posed substantial risks to her health constituted constructive discharge); *Phillips*, 811 F.Supp. at 793 (stating in dicta that "if plaintiff was placed in a work environment which was hazardous to her health because of lack of proper training, a constructive discharge claim would lie."); *Halbrook v. Reichhold Chemicals, Inc.*, 735 F.Supp. 121, 128 (S.D.N.Y.1990) (reasonable inference created to survive motion for summary judgment on constructive discharge claim when factual allegations, taken as a whole, include change in responsibilities, reduction in workload, humiliation and embarrassment, and the absence of any further chance of advancement).

▮ Generally, the conditions must be harsh enough to justify diverting from the supposition that the underlying policies of Title VII "will be best served if, whenever possible, unlawful discrimination is attacked within the context of the existing employment relationship." *Bourque*, 617 F.2d at 66. Title VII does not promote resignation and litigation as the preferred methods for seeking redress of discrimination. These considerations have led some courts to require not only a finding of intentional discrimination, but also "aggravating factors" that drove the employee to resign. *See, e.g., Dashnaw v. Pena*, 12 F.3d 1112, 1115 (D.C.Cir.1994) (discriminatory failure to promote, without more, not an "aggravating factor," therefore not constructive discharge); *James v. Sears, Roebuck & Co.*, 21 F.3d 989, 992–93 (10th Cir.1994) (being forced to accept reassignment with lower pay or lower status, depending on the circumstances, constitutes aggravating factor that justifies finding of constructive discharge) (citations omitted); *Clark v. Marsh*, 665 F.2d 1168, 1174 (D.C.Cir.1981) ("constructive[ ] discharge must be justified by the existence of certain

'aggravating factors' ") (citation omitted); *Pittman*, 644 F.2d at 1077 (failure to equalize pay not an aggravating factor sufficient to constitute constructive discharge); *Bourque*, 617 F.2d at 66 ("unequal pay alone does not constitute such an aggravated situation that a reasonable employee would be forced to resign"); *Grant*, 638 F.Supp. at 1539 ("Courts have refused to find a constructive discharge based on discrimination alone, without a finding of 'aggravating factors.' ") (citations omitted). Moreover, this Court has held that to demonstrate constructive discharge, the plaintiff must demonstrate harassment that is more severe and pervasive than that required to show a hostile work environment. *Christopher–Ketchum v. Agway Energy Products*, 988 F.Supp. 610 (N.D.N.Y.1997).

▮ Considered as a whole, the evidence in this case is insufficient as a matter of law to establish that a reasonable employee in the plaintiff's position would have felt compelled to resign. We consider the facts in the light most favorable to the plaintiff. Therefore, given that there is some evidence in the record on the following matters, we accept as true plaintiff's contentions that the NDs: 1) denied plaintiff a promotion (it is uncontested that plaintiff started her position as a GS–12 and resigned over four years later as a GS–12; Pl. Mem. of Law Ex. 2); 2) informally reprimanded the plaintiff as "insubordinate" (Pl. Mem. of Law Ex. 7; White Decl. Ex. O) [1]; 3) gave the plaintiff a "minimally satisfactory" evaluation on two criteria on her performance evaluation (White Decl. Ex. M); and 4) prohibited the plaintiff from interacting with the NAACP until a conflict could be resolved regarding plaintiff's conduct (White Decl. Ex. P, Q).[2]

1. Norma White was the EEO Complaints Manager for DOJ and was the individual responsible for monitoring and overseeing the processing of all Title VII cases involving DOJ employees. She is also the official custodian of the EEO files and records for complaints arising within the CRS. Ms. White attached copies of documents and witness statements from the EEO investigation of plaintiff's complaint to her declaration.

2. No evidence, however, has been presented on plaintiff's allegations that the NDs: 1) failed to end the harassment (it is uncontested that Jones

was removed as plaintiff's supervisor); and 2) obstructed plaintiff's access to the appropriate officials to seek relief from the harassment. The latter is a bare assertion without any evidentiary support and accordingly is not sufficient to refute a summary judgment motion under Fed. R.Civ.P. 56(e). In fact, there is ample evidence that plaintiff processed her EEOC complaint to completion and that ND Hughes participated in attempting to informally resolve plaintiff's complaints. Pl. Mem. of Law Ex. 2. Also unsupported are allegations that any ND: 1) used derogatory female stereotypes in reference to her (bare

These allegations are insufficient. Denial of a promotion does not support a claim of constructive discharge. *See Muller,* 509 F.2d at 929. The case law is also clear that criticisms of a plaintiff's work performance do not support a claim of constructive discharge. *See Martin,* 762 F.2d at 221; *Spence,* 995 F.2d at 1156; *Stetson,* 995 F.2d at 360; *Clowes v. Allegheny Valley Hospital,* 991 F.2d 1159, 1162 (3d Cir.1993). Lastly, alterations in, or an employee's dissatisfaction with, her responsibilities or assignments do not give rise to an inference of constructive discharge. *See Stetson,* 995 F.2d at 360; *Pena,* 702 F.2d at. Here, plaintiff's job responsibilities were not significantly altered; she was simply restrained from interacting with one particular organization. She was permitted to continue her work with other groups as a Conciliation Specialist. Her job duties continued as before, only not with the NAACP.

Even taken together, the allegations are not legally sufficient to support the claim. All of plaintiff's allegations with respect to the NDs stem from her relationship with Jones, the removed Regional Director. Even the "minimally satisfactory" marks on her performance evaluation seem to be, in part, a result of a conversation between plaintiff and the ND's assistant over problems with Jones; specifically the ND's alleged foot-dragging response to plaintiff's complaint about her. Plaintiff's continued conflict with the NDs

was entirely the result of the past conflict with Jones that plaintiff would not let subside even after Jones' removal, i.e. plaintiff's insistence that prior evaluations be altered, or that prior reprimands be rescinded even though no formal reprimands existed in plaintiff's official personnel file. Once Jones was removed, there is nothing to support the inference that some new conflict arose between plaintiff and the ND, or between plaintiff and the new Acting Regional Director for that matter.[3] In short, there is nothing in the plaintiff's record to explain why plaintiff chose to resign in October 1989.

Plaintiff's case is significantly undercut by the fact that the source of her problems, Jones, was removed nearly two months prior to submitting her resignation.[4] Similarly, in *Steiner v. Showboat Operating Co.,* 25 F.3d 1459 (9th Cir.1994), *cert. denied,* 513 U.S. 1082, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995), the court concluded that the plaintiff's sex discrimination constructive discharge claim was precluded by the fact that the offending supervisor was fired two and one-half months prior to claimant's resignation. *Id.* at 1465–66. Additionally, in *Landgraf v. USI Film Products,* 968 F.2d 427 (5th Cir. 1992), *aff'd* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the court concluded that a reasonable employee would not feel compelled to resign immediately following institution of measures reasonably calculated to

assertion with no supporting evidence); 2) refused to implement an October 1997 agency directive to evaluate the plaintiff for promotion (no evidence that such a directive was provided); 3) told plaintiff that she resented her filing the EEOC complaint and demanded an apology (bare assertion with no supporting evidence); 4) falsified complaint processing dates (bare assertion with no evidence); and 5) reprimanded the plaintiff in processing her complaint (bare assertion with no evidence).

3. Plaintiff cites receipt of her performance evaluation on August 15, 1989 (two days after Jones' removal), as the last discriminatory action by the National Director that preceded her resignation. Docket No. 16; Pl. Aff. 14. She indicates that CRS management was creating a paper trail documenting plaintiff's work performance with the intention to force her to resign. However, it is uncontested that the overall performance rating on that evaluation was "fully successful" meaning that plaintiff met and exceeded to a

limited degree the performance standards required of her. White Decl. Ex. M. A fact-finder could not possibly conclude that this evaluation was intended to force plaintiff to resign or that a reasonable employee faced with these circumstances would feel compelled to resign.

4. Even if plaintiff was thinking about resigning prior to Jones' removal, plaintiff did not officially tender a resignation until submitting her October 3, 1989 letter to then Acting Regional Director Patricia Glenn. Since plaintiff could have never tendered that written resignation and supposedly remained in her position, her intentions to resign prior to the October 3 date are not relevant for the purposes of asserting that she "resigned" while Jones was her supervisor. Additionally, there is no evidence in the record of a conversation occurring between plaintiff and Senior Conciliator Victor Risso where plaintiff indicated she was resigning. The only evidence of an intention to resign was the written resignation dated October 3, 1989 to take effect October 21, 1989.

stop the harassment. *Id.* at 430–31. Here, defendant, shortly before the plaintiff's resignation, instituted measures reasonably calculated to stop the discriminatory conduct by removing the offending supervisor. Plaintiff provides no evidence of any subsequent conduct sufficient to create a fact issue as to whether a reasonable employee in her shoes would have felt compelled to resign. Accordingly, defendant's motion for summary judgment is granted.

## III. CONCLUSION:

For all the foregoing reasons, it is hereby

**ORDERED** that defendant's motion for summary judgment dismissing the plaintiff's claim of discriminatory discharge under Title VII is **GRANTED**.

**IT IS SO ORDERED.**